_____

No. 94-4104
_____

Roger C. Adams; Harriet A.          *
Graham; Robert H. Adams; David      *
Adams; F. Montgomery Adams,         *
Jr., individually and as            *
children of decedents Frank M.      *
and Novella C. Adams,               *
                                    *
      Plaintiffs - Appellants,      *   Appeal from the United States
                                    *   District Court for the
      v.                            *   Eastern District of Missouri.
                                    *
AlliedSignal General Aviation       *
Avionics; AlliedSignal, Inc.;       *
AlliedSignal Aerospace Company;     *
AlliedSignal Aerospace,             *
Avionics Group,                     *
                                    *
      Defendants - Appellees.       *
                                 _____

            Submitted:  September 15, 1995

                Filed:  January 26, 1996
                                 _____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
                                 _____

LOKEN, Circuit Judge.


      On May 27, 1990, Idaho residents Novella and Frank Adams were
killed in a single engine airplane crash near Naylor, Missouri.  In
this diversity action, their five children seek damages for claims
that the crash was caused by a defect in the airplane's autopilot,
a product named the Bendix/King KFC 150.  Plaintiffs appeal the
dismissal of their wrongful death action without prejudice due to

insufficient service of process.  Concluding that the district court[1] did not abuse its discretion, we affirm.

## I. Background.

Plaintiffs filed their initial complaint on May 21, 1993, alleging that the named defendant, "AlliedSignal General Aviation Avionics (Formerly Bendix/King General Avionics)," is liable as manufacturer of the autopilot.  Plaintiffs personally served the complaint on R. Craig Christie at a business address in Olathe, Kansas.  Plaintiffs later explained that they chose this method of service based upon (i) statements in the 1993 edition of an aviation industry buyers reference book, World Aviation Directory, that Bendix/King is now named AlliedSignal General Aviation Avionics ("ASGAA"), that ASGAA is located at the Kansas address, and that Mr. Christie is its president; and (ii) an anonymous telephone call to the number listed for ASGAA in the Kansas City telephone directory in which plaintiffs' counsel was told that ASGAA is the company's name and Christie is its president.

ASGAA moved to dismiss the complaint for insufficiency of process and insufficiency of service of process,[2] submitting an affidavit by Mr. Christie stating that he is not an employee, officer, or director of ASGAA, is not authorized to accept service for ASGAA, and indeed is not aware of any corporation named ASGAA. Plaintiffs promptly moved for leave to file an amended complaint naming as additional defendants AlliedSignal, Inc.; AlliedSignal Aerospace Company; and AlliedSignal Aerospace, Avionics Group.  The

---

[1]The HONORABLE JEAN C. HAMILTON, Chief Judge of the United States District Court for the Eastern District of Missouri.

[2]See Fed. R. Civ. P. 12(b)(4) and (5).  The distinction between the two insufficiencies is often blurred, and it is appropriate to present and analyze service issues under both rules.  See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1353, at 277 (2d ed. 1990).

amended complaint alleged that these four defendants "individually or collectively, is [sic] a corporation and/or business."  The district court granted leave to amend.  Plaintiffs served the new defendants by personally serving Mr. Christie at the Kansas address, after counsel again consulted the World Aviation Directory and placed another anonymous call to that business office.

The new defendants filed motions to dismiss, and ASGAA renewed its motion to dismiss, again challenging service of process. Defendants submitted two additional Christie affidavits stating that (i) he is Senior Vice President of King Radio Corporation, a Kansas corporation located at the Olathe, Kansas, address; (ii) King Radio is a wholly-owned but separately-operated subsidiary of AlliedSignal, Inc., a Delaware corporation having its principal office in New Jersey; (iii) he is not an employee, officer, or director of AlliedSignal, Inc., and is not authorized to accept service on its behalf; and (iv) the other new defendants, AlliedSignal Aerospace Company and AlliedSignal Aerospace, Avionics Group, do not exist as legal entities.

Plaintiffs made no additional effort to serve the four named defendants, did not seek leave to add King Radio as an additional defendant, and did not seek discovery on the service issues. Instead, plaintiffs filed an affidavit explaining the results of their World Aviation Directory and telephone inquiries, arguing that this research established that Christie is president of ASGAA, which has an office at the Kansas address.  Therefore, plaintiffs concluded, service on Christie was personal service on the corporation that manufactured the allegedly defective autopilot.

Some months later, with discovery paralyzed by the service of process dispute, the district court took up defendants' long-pending motions and dismissed the amended complaint without prejudice.  The court reasoned that World Aviation Directory excerpts and plaintiffs' telephone inquiries did not reliably

-3-

refute defendants' showing that Mr. Christie was not authorized to accept service of process on behalf of any named defendant.

Plaintiffs then filed a motion to reconsider, arguing again that service on Christie was effective to serve all four named defendants. Plaintiffs' submission in support of that motion included: (i) State of Kansas Corporate Annual Reports for King Radio Corporation for 1989-1992. These reports confirmed Christie's averral that King Radio was a wholly-owned subsidiary of AlliedSignal, Inc., doing business at the Olathe, Kansas, address. (ii) An affidavit and chart describing the corporate structure of AlliedSignal, Inc., and some of its operating divisions and subsidiaries, based upon information informally provided by an AlliedSignal public relations office. That information, too, was consistent with the facts presented in support of defendants' motions to dismiss. (iii) Pleadings from a lawsuit in the Northern District of Ohio showing that King Radio had, without objecting to the manner of service, answered a complaint that improperly named King Radio as Allied Signal Aerospace Co.

As an alternative to their request that the district court reverse its prior ruling, plaintiffs requested an additional sixty days to reserve defendants. Plaintiffs argued that dismissal without prejudice was too harsh because a three-year Missouri statute of limitations had then expired.[3] They further argued that there was good cause to extend the 120-day time limit for service of process because plaintiffs were misled by defendants' "maze of organizations, shells, strategic business units, operating units, and other such corporate structures." Plaintiffs requested a "short window of discovery" to explore these service issues.

_____

[3]For purposes of the appeal, we assume without deciding that this Missouri statute of limitations governs plaintiffs' claims.

-4-

The district court denied the motion to reconsider, concluding that plaintiffs had presented no new evidence that service on Mr. Christie was effective service on any defendant. The court denied plaintiffs' request to reserve and for discovery because plaintiffs had not acted diligently and indeed had yet to serve the proper defendant despite being given sufficient information to do so in the Christie affidavits. This appeal followed.

## II. Adequacy of Service.

On this record, one of two corporations may be the proper entity to defend plaintiffs' claims -- AlliedSignal, Inc., which was never served, and its subsidiary, King Radio, which was never named. Plaintiffs have no proof that the other three named defendants are separate corporations. These defendants appear to be either operating divisions of AlliedSignal, Inc., or trade names used by AlliedSignal or one of its subsidiaries. Of course, the actual structure of the AlliedSignal corporate family may be different, but plaintiffs have elected to have service issues decided on this record.

Changing their emphasis on appeal, plaintiffs stress the contention that Christie was authorized to accept service on behalf of the parent corporation, AlliedSignal, Inc., the only named defendant that clearly exists. However, they have no evidence effectively contradicting Christie's sworn statement that he is not an agent of that corporation on whom process may be served under Fed. R. Civ. P. 4(h)(1). Christie is an officer of King Radio, and plaintiffs submitted evidence that King Radio advertises its subsidiary relationship with AlliedSignal, Inc. But absent probative evidence that the two corporations are not independently operated, service on an officer of a subsidiary, here King Radio, does not effect service on the parent corporation, AlliedSignal, Inc. See I.A.M. Nat'l Pension Fund v. Wakefield Indus., 699 F.2d 1254, 1258-59 (D.C. Cir. 1983); Orbis Marine Enters. v. TEC Marine

-5-

Lines, Ltd., 692 F. Supp. 280, 286 (S.D.N.Y. 1988).  And if AlliedSignal, Inc., was improperly served, the district court lacked jurisdiction over that defendant whether or not it had actual notice of the lawsuit.  See Printed Media Servs., Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993).

Plaintiffs' failures to properly serve AlliedSignal, Inc., and to name King Radio are baffling.  The use of trade names, operating divisions, and independent subsidiaries by enterprises the size of AlliedSignal, Inc., is hardly unusual.  The need to identify the proper corporate defendant is apparent to any practicing attorney, particularly if issues of successor corporate liability loom, as the Bendix/King product name suggests.  Industry buyer guides and anonymous calls to business offices are not reliable sources for identifying proper corporate names, whereas the Christie affidavits identified King Radio and AlliedSignal, Inc., and told plaintiffs where to serve them.  Then, when plaintiffs belatedly went to a reliable source, the State of Kansas Corporate Annual Reports, those reports confirmed Christie's averrals.

For these reasons, the district court properly ruled that plaintiffs had failed to serve any defendant within 120 days, the time limit imposed by Fed. R. Civ. P. 4(m).  As in Gonzalez v. Temple Mountain Ski Resort, Inc., 613 F. Supp. 354, 355 (D. Mass. 1985), there is *no* proper service when the person served is an officer of a corporation not named a defendant.  Plaintiffs complain that King Radio apparently waived a similar defect in the Ohio litigation.  But defendants had no obligation to waive their due process right to proper service.  They were obliged not to evade service, but because they provided accurate information in the Christie affidavits, they cannot be accused of evading service.

### III. Dismissal of the Action.

As in the district court, plaintiffs alternatively argue that the district court erred in dismissing their amended complaint without prejudice.  Rule 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if a plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period . . . .

This Rule was effective on December 1, 1993, and governs "all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." Supreme Court Order of April 22, 1993, Adopting and Amending Rules of Civil Procedure, ¶ 2.

Plaintiffs first argue that we must remand because the district court failed to perceive that it had the discretion to quash service of process but retain jurisdiction. See C & L Farms, Inc. v. Federal Crop Ins. Corp., 771 F.2d 407, 408-09 (8th Cir. 1985); Haley v. Simmons, 529 F.2d 78, 79 (8th Cir. 1976).  After careful review of the district court's two thorough opinions, however, we are satisfied the court appreciated that its decision to dismiss was discretionary, rather than mandatory.

Plaintiffs next argue that the district court abused its discretion by denying their requests to correct the names of the defendants sued, and for limited discovery on service of process issues.  The request for discovery requires little discussion.  It came nearly one year after defendants first raised service of process issues and submitted the Christie affidavits.  The district court did not abuse its discretion in denying this belated request as untimely.

-7-

The request to correct defendants' names as pleaded is more difficult. On appeal, plaintiffs assert that they asked to substitute King Radio Corporation for one of the non-existent named defendants, as effectively happened in the Ohio litigation when King Radio answered disclosing its correct corporate name. Had this been explained to the district court, such relief might have been appropriate. See Cobb v. Stringer, 660 F. Supp. 1133, 1136-37 (W.D. Ark. 1987) (subsequent history omitted). But plaintiffs instead asked the district court to substitute King Radio's March 1994 successor[4] for King Radio, claiming that King Radio had "operated at all times relevant herein as a unit of the other defendants." This untimely request did not address plaintiffs' real problem -- their persistent, inexplicable failure to name as defendant King Radio, the separate corporation of which Christie was admittedly an officer and managing agent. Thus, we conclude there was no abuse of discretion in denying this request.

For the first time in their reply brief, plaintiffs raise another issue they belatedly presented to the district court -- whether that court's dismissal was an abuse of discretion under new Rule 4(m). The prior Rule required dismissal if plaintiff "cannot show good cause why such service was not made within" 120 days. See Fed. R. Civ. P. 4(j) (1991). The new Rule increases a district court's discretion to extend the 120-day time period by authorizing the court "to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." Rule 4 Advisory Committee Notes (1993). Thus, under Rule 4(m), if the district court concludes there is good cause for plaintiff's failure to serve within 120 days, it *shall* extend the time for service. If plaintiff fails to show good cause, the court still *may* extend the time for service rather than dismiss the case

---

[4]Apparently, King Radio changed its name to AlliedSignal Avionics, Inc., following its March 1994 merger with another AlliedSignal entity (not a named defendant).

without prejudice.  See Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995); Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

Plaintiffs argue that their diligent inquiries and prompt filing of an amended complaint satisfy Rule 4(m)'s good cause standard.  A showing of good cause requires at least "excusable neglect" -- good faith and some reasonable basis for noncompliance with the rules.  See Lujano v. Omaha Public Power Dist., 30 F.3d 1032, 1035 (8th Cir. 1994); Pellegrin & Levine, Chartered v. Antoine, 961 F.2d 277, 282-83 (D.C. Cir. 1992).  When counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails.  See Traina v. United States, 911 F.2d 1155, 1157 (5th Cir. 1990).

Here, for one year plaintiffs ignored reliable sources of corporate structure information, such as the Kansas Secretary of State, and refused either to act on the information provided in the Christie affidavits, or to look behind that information through discovery.  Even when the Kansas Corporate Annual Reports and information provided by an AlliedSignal public relations office confirmed the Christie affidavits, plaintiffs stubbornly refused to take the obvious step of moving for leave to add King Radio as a named defendant.  Thus, plaintiffs' insufficiency of service was willful, not inadvertent.  We cannot conclude that the district court abused its discretion in finding no good cause for the resulting delay.  See Edwards v. Edwards, 754 F.2d 298, 299 (8th Cir. 1985) (standard of review).

Alternatively, plaintiffs argue that the district court abused its Rule 4(m) discretion by refusing to grant a permissive extension of the 120-day time limit.  Plaintiffs rely upon the Rule 4(m) Advisory Committee Notes, which state that such relief "may be

justified, for example, if the applicable statute of limitations would bar the refiled action."  However, "the running of the statute of limitations does not require the district court to extend time for service of process."  <u>Petrucelli</u>, 46 F.3d at 1306.

Plaintiffs requested this discretionary relief almost one year after service issues were first raised.  During that period, the service of process dispute frustrated discovery (because no named defendant had been served) and disrupted the court's efforts to set a trial date.  Plaintiffs in requesting more time assured the district court that they could now effect service.  But they never took the obvious step of seeking to add King Radio, and they did not advise the district court what steps would now be taken to effect service and why the failure to serve would then be cured.  Indeed, even on appeal plaintiffs do not acknowledge the need to sue King Radio (or its successor), despite clear record evidence to the contrary.

At some point, a litigant must bear the consequences of conscious strategic or tactical decisions of this kind.  Although this dismissal without prejudice may prove to have severe consequences, the district court correctly applied the applicable rules of civil procedure, carefully considered plaintiffs' arguments on the service issues, and gave plaintiffs repeated opportunities to correct their service insufficiencies.  We conclude that the court's ultimate decision to dismiss without prejudice was not an abuse of its substantial Rule 4(m) discretion.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.