**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 17, 2019**

# In the Court of Appeals of Georgia

A19A1494. IN RE ESTATE OF KEVIN LEE HANSON.                    95-049

PHIPPS, Senior Appellate Judge.

The trial court appointed Randy Joe Hanson and Terry Sue Hanson (the "parents") as co-guardians and co-conservators of their adult son, Kevin Lee Hanson ("Kevin"). Kevin's girlfriend, Kimberly Babbitt (the "girlfriend"), appeals several of the trial court's orders, arguing, among other things, that the trial court lacked jurisdiction over the case. For the reasons that follow, we vacate the trial court's order appointing the parents as Kevin's co-guardians and co-conservators and remand for further proceedings consistent with this opinion.

"In reviewing an order on a petition for guardianship, we will not set aside the probate court's findings unless they are clearly erroneous, and when such findings are supported by any evidence, they will be upheld on appeal." (Citations and

punctuation omitted.) *In the Interest of M.P.*, 338 Ga. App. 696, 697 (791 SE2d 592) (2016). "The probate court's application of the law, however, is subject to de novo review." (Footnote omitted.) Id. at 698.

The record shows that Kevin lived in Florida when he was catastrophically injured in Miami on March 15, 2018. Kevin was treated first in Florida and was then transported to Atlanta for treatment at the Shepherd Center in either late March or early April 2018. On June 26, 2018, while Kevin remained in Georgia, the parents filed a petition in the Probate Court of Fulton County seeking to be appointed as Kevin's emergency co-guardians and co-conservators. The trial court granted the petition on June 29, 2018, to last "for 60 days, or until the effective date of the appointment of a permanent guardian/conservator." On July 3, 2018, the parents filed a petition seeking to be appointed Kevin's permanent co-guardians and co-conservators. On August 23, 2018, prior to the expiration of the first emergency appointment and before the trial court ruled on their permanent petition, the parents filed a emergency petition.

On August 28, 2018, the girlfriend filed a petition to be appointed Kevin's permanent guardian and conservator in probate court in Hillsborough County, Florida. On August 31, 2018, the trial court granted the second emergency petition.

The trial court held a hearing on the petition for permanent conservatorship and guardianship on October 12, 2018, at which the parents, the girlfriend, and Kevin's guardian-ad-litem testified. Also at this hearing, the parents' attorney stated that the girlfriend's Florida petition had been dismissed.[1] On October 15, 2018, the trial court entered an order naming the parents as the permanent co-guardians and co-conservators for Kevin, and the girlfriend appealed.

1. The girlfriend first asserts that the trial court erred in finding that it had jurisdiction to appoint a guardian and issue a conservatorship over Kevin because it failed to consider the factors necessary to establish that Kevin had a significant connection with Georgia. We agree.

In reviewing a lower court's ruling on the existence of personal jurisdiction, this Court resolves all disputed issues of fact "in favor of the party asserting the existence of personal jurisdiction," and the party asserting the lack of jurisdiction

___

[1] The Hillsboro County probate court's order does not appear to be in the trial court's record. On appeal, the parents moved this Court to supplement the trial court's record to include that order, but we denied the motion pursuant to *Harp v. State*, 204 Ga. App. 527, 527 (1) (420 SE2d 6) (1992) ("evidence never actually admitted at trial cannot properly become a part of the record on appeal pursuant to OCGA § 5-6-41 (f)") (citation omitted).

bears the burden of proving that Georgia courts lack personal jurisdiction. *In the Interest of M.P.*, 338 Ga. App. at 698 (1).

Here, the trial court's order finding that Georgia had jurisdiction over this matter did not specify which subsection of OCGA § 29-11-12 applied to this case. Nonetheless, the trial court's findings that "Georgia [is] not [Kevin's] home state" and that Kevin "had a significant connection to Fulton County, Georgia due to receiving life altering treatment from the Shepherd Center[,]" appear to show that the trial court found jurisdiction under OCGA § 29-11-12 (2) (B). OCGA § 29-11-12 (2) (B) requires that:

> (2) On the date the petition is filed, this state is a significant-connection state and
>
> . . . .
>
>> (B) The respondent has a home state, a petition for an appointment or order is not pending in a court of that state or another significant-connection state, and, before the court makes the appointment or issues the order:
>>
>>> (i) A petition for an appointment or order is not filed in the respondent's home state;
>>> (ii) An objection to the court's jurisdiction is not filed by a person required to be notified of the proceeding; and

4

> (iii) The court in this state concludes that it is an appropriate forum under the factors set forth in Code Section 29-11-15[.]

OCGA § 29-11-12.

OCGA § 29-11-10 lists five factors that the trial court "shall consider" in determining whether a proposed ward has a significant connection with a state,[2] and the girlfriend argues that the trial court failed to consider any of these factors before determining that Kevin had a significant connection to Georgia.[3] On its face, the trial

---

[2] In determining under Code Section 29-11-12 and subsection (e) of Code Section 29-11-20 whether a respondent has a significant connection with a particular state, the court shall consider:

(1) The location of the respondent's family and other persons required to be notified of the guardianship proceeding or conservatorship proceeding;
(2) The length of time the respondent at any time was physically present in the state and the duration of any absence;
(3) The location of the respondent's property;
(4) The extent to which the respondent has ties to the state such as voting registration, state or local tax return filing, vehicle registration, driver's license, social relationship, and receipt of services; and
(5) The extent to which the respondent considers or, in the absence of an impairment of mental faculties, would consider himself or herself to have a significant connection with the state.

OCGA § 29-11-10.

[3] The parties do not dispute that Georgia is not Kevin's home state.

court's order does not show that it considered these factors. By its express terms, OCGA § 29-11-10 requires the trial court to consider each of the statutory factors enumerated. Although OCGA § 29-11-10 does not expressly require specific findings of fact on each factor, we find that the trial court must set out upon the record the essential reasoning that forms the basis for its exercise of discretion. Without such a reasoning, we cannot ascertain whether that exercise was improper. See generally *Wang v. Liu*, 292 Ga. 568, 570 (1) (740 SE2d 136) (2013) ("Considering the number, variety, and nature of the statutory factors that necessarily must inform the discretion of the trial court, meaningful appellate review is possible only if the record reflects in some way the thinking that led the trial court to exercise its discretion as it did"); *Lucado v. Coherd*, 320 Ga. App. 241, 242-243 (739 SE2d 749) (2013) (holding that it is an abuse of discretion not to weigh factors where the statute requires that the factors be weighed). The detail required to adequately explain the essential reasoning of the trial court will depend upon the peculiar circumstances of the case, the closeness of the questions involved, and the ground upon which the court decides the motion. See generally *Wang*, 292 Ga. at 570-571 (1).

The trial court's order also does not address whether (1) a petition for appointment or order was filed in Florida, (2) an objection to Georgia's jurisdiction

6

had been filed by a person required to be notified of the proceeding, or (3) whether Georgia was an appropriate forum under the factors set forth in OCGA § 29-11-15. The trial court likewise was required to consider these factors. OCGA § 29-11-12 (2) (B) (i) through (iii).

Accordingly, we vacate the trial court's order appointing the parents as the permanent co-guardians and co-conservators for Kevin and remand for the trial court to consider each of the significant connection factors in OCGA § 29-11-10 and to address the factors in OCGA § 29-11-12 (2) (B) (i) through (iii). See, e.g., *Urrea v. Flythe*, 215 Ga. App. 212, 213 (450 SE2d 266) (1994) (reversing and remanding case to the trial court "to determine whether appellant has met the necessary jurisdictional prerequisites for filing a renewal suit").

2. In light of our decision in Division 1, we do not address the girlfriend's remaining enumerations of error.

*Judgment vacated and case remanded with direction. McFadden, C.J., and McMillian, P.J., concur.*

7